**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHER DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case No. 12 C 1416** |
| v. | ) | |
| | ) | **Magistrate Judge Jeffrey Cole** |
| **DERRICK B. TARTT,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION AND ORDER

Mr. Tartt has defaulted on two Department of Education student loans. The United States has sued to recover what he owes, which is more than $775,000. Mr. Tartt's response has been to obfuscate his indebtedness with the following counterclaim:

> . . . the defendant agrees there is indebtedness. The indebtedness is to the defendant and demand [sic] judgment against the United States of America for the follows [sic]:
>
> a. For plaintiff's conspiracy to deny benefits of employment, torture, discrimination, violations of the constitution, fraudulent representation, bias judiciary to cause loss of liberty, property and monetary gains, judgment in the amount of not less than $50,000,000 but not greater than $100,000,000.
>
> b. Any additional reliefs [sic] the court deem [sic] appropriate against Defendant the United States of America, the conspirator against the Plaintiff, its own citizen.

(Dkt. # 8). The government has moved for summary judgment on its claim and moved to dismiss Mr. Tartt's counterclaim for lack of subject matter jurisdiction.

# I.
# BACKGROUND

## A.
## Summary Judgment Under Local Rule 56.1

As always, the facts underlying this summary judgment proceeding are drawn from the parties' Local Rule 56.1 submissions. "For litigants appearing in the Northern District of Illinois, the Rule 56.1 statement is a critical, and required, component of a litigant's response to a motion for summary judgment." *Sojka v. Bovis Lend Lease, Inc.*, 686 F.3d 394, –, (7th Cir. 2012). The party opposing summary judgment must respond to the movant's statement of proposed material facts, and that response must contain both "a response to each numbered paragraph in the moving party's statement," Local Rule 56.1(b)(3)(B), and a separate statement "consisting of short numbered paragraphs, of any additional facts that require the denial of summary judgment," Local Rule 56.1(b)(3)(C); *Sojka*, 686 F.3d at —; *Ciomber v. Cooperative Plus, Inc.*, 527 F.3d 635, 643 (7th Cir. 2008). Each response, and each asserted fact, must be supported with a reference to the record. Local Rule 56.1(b)(3)(B); *Cracco v. Vitran Exp., Inc.*, 559 F.3d 625, 632 (7th Cir. 2009); *F.T.C. v. Bay Area Business Council, Inc.*, 423 F.3d 627, 633 (7th Cir. 2005).

The district court is entitled to expect strict compliance with the rule. *Shaffer v. American Medical Ass'n*, 662 F.3d 439, 442 (7th Cir. 2011); *Benuzzi v. Board of Educ. of City of Chicago*, 647 F.3d 652, 654 (7th Cir. 2011). Responses and facts that are not set out and appropriately supported in an opponent's Rule 56.1 response will not be considered, *see Shaffer*, 662 F.3d at 442 (court need not consider any fact not contained in the parties' Rule 56.1 statements); *Bay Area Business Council.*, 423 F.3d at 633 (court properly disregarded affidavits not referenced in 56.1 submission). and the movant's version of the facts – if compliant with the rule – will be deemed admitted.

Local Rule 56.1(b)(3)(C); *Rao v. BP Products North America, Inc.*, 589 F.3d 389, 393 (7th Cir. 2009); *Montano v. City of Chicago*, 535 F.3d 558, 569 (7th Cir. 2008); *Cracco*, 559 F.3d at 632. Mr. Tartt disputes a few of the government's facts, but he has not cited a single piece of evidence to support his contentions. As such, all the government's facts are deemed admitted to the extent they are supported by the record.

**B.
Facts**

The record includes copies of two promissory notes Mr. Tartt executed evincing the loans at issue. One is dated July 23, 1997, and is in the amount of $325,125.56. (the "1997 Loan"). (*Plaintiff's Local Rule 56.1 Statement* ("*Pl.St.*"), ¶¶ 5-6 (Ex. A)). The other is dated April 30, 1995, and is in the amount of $45, 863.61. (The "1995 Loan"). (*Pl.St.*, ¶ 9 (Ex. C)). In his answer to the United States' complaint, Mr. Tartt agreed that he executed the two notes. (Dkt. # 8, Count I, ¶ 3; *Mr. Tartt's Response* ("*Def.Rsp.*"), ¶ 5). Mr. Tartt disagrees that the copies in the record are true and correct copies of the notes, but offers no support for his position. (*Def.Rsp.*, ¶¶ 6, 9).

The record also includes sworn Certificates of Indebtedness from the Department of Education as to the amounts paid, interest accrued, and amount owed as a result. (*Pl.St.*, ¶¶ 7, 10 (Exs. B, D)). As for the 1997 Loan, the total due as of April 15, 2011, was $678,503.22, and $57.75 in interest has accrued daily thereafter. (*Pl.St.*, ¶ 7 (Ex. B)). Mr. Tartt disagrees that this is accurate but, again, offers no support for his stance. (*Def.Rsp.*, ¶ 7). The other certificate refers to a note dated April 30, 1999, rather that 1995 as the year on the note reads. (*Pl.St.*, ¶ 7 (Ex. B)). This certificate states that the total due under the April 30, 1999 Loan, as of April 15, 2011, was $77,022.12 and that $5.01 in interest has accrued daily thereafter. (*Pl.St.*, ¶ 7 (Ex. B)). Mr. Tartt, not surprisingly, disagrees with the calculations given the different dates. He contends the note was

signed in 1999 as opposed to 1995. He explains:

> In 1995 Defendant was on active duty, both loans were secure after the Hardship Discharge from active duty to the US Army Reserves in October 1996. The address in 1995 was Radcliff KY. To my knowledge the William D. Ford Federal Loan Program did not exist in 1995. The loans were to be paid in ten years and it has been over eleven years since payment began after 6481 was dismissed. Could this be part of the conspiracy to lose $775,000 and avoid defendant receiving $50,000,000 or more? Conspiracy?

(*Def.Rsp.*, ¶ 11). It should come as no surprise that Mr. Tartt provides no support for any of this; not his time in the Reserves, not his discharge, not his address in 1995, and certainly not his $50,000,000 conspiracy. Still, the United States concedes that Mr. Tartt is correct that the note was signed in 1999. The United States claims it erred in its statement of facts when it referred to the promissory note as being dated 1995.[1]

## II.
## ANALYSIS

### A.
### Summary Judgment

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact." Fed.R.Civ.P. 56(a). Once "a properly supported motion for summary judgment is made," the nonmoving party bears the burden to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986) (internal quotation marks and citation omitted); *Seng-Tiong*, 648 F.3d at 496-97. Notably, any party asserting that a fact is or is not genuinely disputed must cite "to particular parts of materials in the

---

[1] Although the date on the note looks more like a 99 than a 95 – the two digits on the note do not look similar (Ex. C) – it is clearly the United States' error as the additional four years of interest would run to the detriment of Mr. Tartt and to the advantage of the United States.

4

record," or show that "an adverse party cannot produce admissible evidence to support the fact." Fed.R.Civ.P. 56(c)(1). Thus, "a party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading." *Anderson,* 477 U.S. at 256; *Seng-Tiong*, 648 F.3d at 497. Additionally, a "court need consider only the cited materials." Fed.R.Civ.P. 56(c)(3).

**B.**

**The Government is Entitled to Summary Judgment on its Student Loan Claim**

To recover on a promissory note the government must first make a *prima facie* showing that (1) the defendant signed it, (2) the government is the present owner or holder and (3) the note is in default. *United States v. Petroff-Kline*, 557 F.3d 285, 290 (6th Cir. 2009); *United States v. Lawrence*, 276 F.3d 193, 197 (5th Cir. 2001); *United States v. Lawrence*, 276 F.3d 193, 197 (5th Cir. 2001). A sworn certificate of indebtedness suffices to make out a prima facie case that the note is in default. *Petroff-Kline*, 557 F.3d at 290. The government has done this here. Once such a prima facie case is established, defendant has the burden of proving the nonexistence, extinguishment or variance in payment of the obligation. *Petroff-Kline*, 557 F.3d at 290. Given the fact that Mr. Tartt has failed to properly contest any of the government's asserted facts and has not submitted any evidence to the court that in any way casts doubt on his indebtedness and failure to pay, summary judgment on the two notes is warranted.[2]

---

[2] Mr. Tartt misapprehends the motion for summary judgment as one to enter a default judgment. It's not, of course. Mr. Tartt may have defaulted on his loan, but he did not default in his efforts to defend himself against the United States' lawsuit. He has been an active participant.

## C.
## Mr. Tartt's Counterclaim Must Be Dismissed

While Mr. Tartt did not cite any evidence in his Local Rule 56.1 response, he did attach some to his response memorandum. It has nothing to do with his default on his student loan, however, and is probably what he considers the basis for his "conspiracy" claim. It consists of a series of emails and letters from the summer of 2012, in which Mr. Tartt sought to retain counsel to overturn a ruling in a previous lawsuit, which proceeded as far as the Seventh Circuit, where he lost his appeal. A bit of background would be helpful here. In 1978, while a freshman at Alcorn State University, Mr. Tartt enrolled in the Army ROTC program. As a result, he committed to serving six years in the Army, including three years of active duty. When he graduated from college, Mr. Tartt sought and received a delay in his active duty obligation while he attended medical school at the University of Wisconsin. Thereafter, he sought yearly deferments from 1987 through 1992 until 1993, when the Army ordered him to active duty. He challenged that in federal court with a petition for *habeas corpus*, but ultimately failed and had to report. *See Tartt v. Secretary of the Army*, 1994 WL 75121, *1 (N.D.Ill. 1994); *Tartt v. Northwest Community Hosp.*, 2004 WL 2254041, *1 (N.D.Ill. 2004).

Just prior to that, in July 1993, Mr. Tartt signed an employment contract with Northwest Suburban Anesthesiologists ("NSA"). He worked for about a year until he took a leave of absence to comply with his military service obligations in July 1994. While he was in the service, he practiced anesthesiology at Northwest Community Hospital ("NCH") in violation of his contract with NSA. He later admitted as much in a revised contract with NSA, which he signed in 1997 – he also agreed to repay the $18,000 he misappropriated. NSA eventually terminated him in 2000, and Mr. Tartt sued them for discrimination in violation of the Uniformed Services Employment and Reemployment Rights Act of 1994 ("USERRA"), and Title VII. *Northwest Community Hosp.*, 2004

WL 2254041, *1. His case was eventually dismissed for failure to prosecute and he ultimately lost on appeal. *Tartt v. Northwest Community Hosp.*, 453 F.3d 817, 823 (7th Cir. 2006). As more than one attorney explained to him in July and August of 2012, he cannot reopen that case now, six years after the fact. And, in any event, it has nothing to do with his student loan.[3]

The "conspiracy" he discusses in his response memorandum is a far cry from the "torture" or "loss of liberty" or denial of "benefit of employment" he raises his complaint. Seemingly, the upshot is that Mr. Tartt couldn't get an attorney to take up his quest to reopen his case against NSA and NCH. It's hard to fathom what that has to do with the government or Mr. Tartt's student loan. Moreover, it wasn't a conspiracy that made it difficult for Mr. Tartt to find a willingly attorney – it was *res judicata.*[4]

Clearly, Mr. Tartt's claim that the United States conspired to torture him, deny him employment, and take away his liberty, and, as he informs us in his response brief "use[]

---

[3] Mr. Tartt also apparently has a beef with Judge Norgle, who ruled against him in his suit against NSA and NCH (*Defendant's Memorandum in Support of Denial of Plaintiff's Motion*, at 2-3) and indicates he filed a judicial misconduct complaint against him that was handled by Judge Easterbrook. Not surprisingly, Judge Easterbrook found no misconduct but, according to Mr. Tartt – he does not attach Judge Easterbrook's findings – called into question the competence of Mr. Tartt's attorney.

[4] The only other evidence Mr. Tartt submits has to do with a Home Affordable Modification Program Loan he applied for with Harris Bank. He was denied because he was not using his property as his primary residence and his monthly housing expenses were less than 31% of his gross monthly income. (Dkt. # 20; *Defendant's Request to Submit Additional Evidence*). Mr. Tartt claims that the denial was wrong based on the Supreme Court of Illinois's ruling that Rahm Emmanuel was a resident of Chicago for the purposes of running for the office of Mayor of the City of Chicago. But, of course, the residency requirements for a candidacy have nothing to do with the loan program's requirement that an applicant live at the property as his *primary* residence. One might ask what any of this has to do with this case, but it is apparently part of Mr. Tartt's conspiracy claim – he alleges that the Office of the Comptroller of the Currency was in cahoots with Harris Bank. It's merely a claim, however, and because this is a summary judgment proceeding, that's not enough. Moreover, the defendant himself has stated in open court that he has been living and working in Florida – not at his property here in Chicago – and he was served in Florida in this case. In other words, there is nothing to suggest the denial was wrong, even in the implausible event the Office of the Comptroller of the Currency had a hand in it.

enhancement techniques on its own citizens." (*Defendant's Memorandum in Support of Denial of Plaintiff's Motion*, at 14 fn.) is implausible on its face. A complaint – or counterclaim – must be plausible on its face, meaning that the plaintiff or counterclaimant must have pled "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2007); *Bell Atlantic Corp. V. Twombly,* 550 U.S. 544, 556 (2007). A complaint need not contain detailed factual allegations to meet that standard, but must go beyond mere labels and conclusions, and must "be enough to raise a right to relief above the speculative level." *G & S Holdings LLC v. Continental Cas. Co.*, 697 F.3d 534, 537-38 (7th Cir. 2012)(quoting *Twombly,* 550 U.S. at 555). Mr. Tartt's counterclaim does nothing of the kind, and his response brief only makes things worse.

But, no matter. In his "conspiracy" counterclaim, Mr. Tartt seeks damages in the amount of $50 to $100 million. The government argues that this court has no jurisdiction over the claim because it far exceeds $10,000. Claims against the United States exceeding $10,000 must be brought in the United States Court of Federal Claims. *On-Site Screening, Inc. v. United States*, 687 F.3d 896, 900 (7th Cir. 2012); *Pershing Div. of Donaldson, Lufkin & Jenrette Securities Corp. v. United States*, 22 F.3d 741, 743 (7th Cir. 1994); *Western Securities Co., a subsidiary of Universal Mortg. Corp. v. Derwinski*, 937 F.2d 1276, 1279 (7th Cir. 1991); *United States v. Lindberg Corp.*, 882 F.2d 1158, 1164 (7th Cir. 1989)(counterclaim). Accordingly, the counterclaim must be dismissed for lack of subject matter jurisdiction.

Finally, Mr. Tartt also seems to suggest he was denied his right to counsel in this case. But there is no constitutional or statutory right to counsel in federal civil cases. *Jones v. Skalski*, – F.3d –, –, 2012 WL 5278611, *3 (7th Cir. 2012); *Guajardo-Palma v. Martinson*, 622 F.3d 801, 803 (7th

8

Cir. 2010); *Romanelli v. Suliene*, 615 F.3d 847, 851 (7th Cir. 2010). If he were indigent, the court would have discretion to appoint counsel under 28 U.S.C. § 1915(e)(1), *Romanelli*, 615 F.3d at 851, but Mr. Tartt states that he is not indigent. (*Defendant's Memorandum in Support of Denial of Plaintiff's Motion*, at 4). Moreover, this is an exceedingly simple debt collection case. *See Jones*, 2012 WL 5278611, *3 (court did not abuse discretion in failing to appoint counsel for indigent party given suits's lack of factual or legal complexity). His right to counsel claim fails.

## CONCLUSION

The plaintiff's motion for summary judgment [# 13] is GRANTED. The defendant's counterclaim is dismissed for lack of subject matter jurisdiction. The plaintiff shall provide a final calculation of the amount due on the two loans as soon as possible so that final judgment may be entered.

ENTERED: _____
UNITED STATES MAGISTRATE JUDGE

DATE: 5/16/13